John TURANO, Plaintiff,

v.

BOARD OF EDUCATION OF ISLAND TREES UNION FREE SCHOOL DISTRICT NO. 26 et al., Defendants.

No. 75 C 606.

United States District Court
E. D. New York.

Feb. 2, 1976.

Supplemental Opinion and Order
March 30, 1976.

Stephen A. Perelson, New York City, for plaintiff.

Geo. W. Lipp, Jr., Babylon, N. Y., for defendant.

## OPINION

PLATT, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants have moved for summary judgment dismissing the plaintiff's action herein on the ground that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. Plaintiff in turn has cross-moved for summary judgment on the same ground.

Neither party served or filed Rule 9(g) statements as required by the General Rules of this Court and ordinarily the Court would deny both motions on this ground alone. However, the affidavits and other papers served and filed herein clearly indicate that there are material facts which are in sharp dispute and while some questions of law are resolved, at least for the present, herein, there are also questions of fact which must await the trial.

Defendants assert that their motion is based upon the following:

"(a) The defendant, board of education or school district, is not a 'person' within the meaning of U.S.C. 42 Sec-

tion 1983 and the Court therefor does not have jurisdiction of either the corporate or individual defendants for the purpose of the relief requested.

(b) The sovereign immunity guaranteed by the Eleventh Amendment extends to the defendants herein and bars this action.

(c) The individual board member defendant's actions are protected by a qualified good faith immunity.

(d) Since the plaintiff has not exhausted his administrative remedies and since the questions involved are primarily of state law the Court should abstain from accepting jurisdiction.

(e) Defendants Liberatore, Lively, Richter and Fasuolo have been improperly joined as defendants herein.

(f) Plaintiff's complaint does not show the existence of such 'property' or 'liberty' rights as to entitle him to the protection afforded by the Fourteenth Amendment.

(g) If plaintiff's complaint has shown a prima facie violation of the U. S. Constitution or of U.S.C. 42 Section 1983 such has been controverted by the proofs annexed hereto."

Certain facts are undisputed; namely, that plaintiff is a duly licensed teacher; that he was employed by the Island Trees Union Free School District No. 26; that during the course of his probationary service he was rated satisfactory, and given excellent evaluations by his principal; and that based upon such rating the Superintendent of the District, Richard Morrow, recommended that he be given tenure. Plaintiff's original probationary appointment was made on January 4, 1972, and was renewed on the anniversary dates of 1973 and 1974.

On the agenda of the meeting of the defendant Board of Education on November 26, 1974, was the question of plaintiff's tenure and at that meeting, by a vote of 4 to 1 (defendants Richter and Lively being absent and defendant Liberatore voting in favor of plaintiff), the Board voted to deny tenure to the plaintiff.

Plaintiff has filed an affidavit in which he states that the defendant Ahrens at that meeting made the following statement which appears in two newspaper articles which he annexes to his affidavit:

"We cannot give a reason for the refusal to grant tenure. First of all it would be damaging to the individual as well as the board. We never discuss personnel matters outside of confidential sessions and this is a policy followed in all school districts. Secondly, if we give a reason for our refusal to grant him tenure, then we'll be opening ourselves up to legal action, in the form of an appeal."

The newspaper articles, of course, are not proof of anything but plaintiff himself swears that the statements were made.

Mr. Ahrens, on this question, states in his affidavit that:

"Since I had previously been given information from various sources that indicated Plaintiff was, in my opinion, unfit to be given tenure I called Mr. Lipp, the board attorney, and asked that he outline to me the board's rights in matters of this sort. He did so in a letter dated November 15, 1974 and in it stated that the board need not give reasons for its actions in denying tenure at the expiration of a probationary term and he orally recommended that we not give reasons.

"I have thereafter consistently refused to give my reasons for voting as I did and have not given them as presiding board officer either. I have been under continuous pressure from Plaintiff and his supporters to give the reasons, but have not done so even though there have been demonstrations, news articles and substantial public dissension concerning the board's action."

Mr. Ahrens is supported, at least in part, by an affidavit filed by the defendant Richard Melchers in which he states that:

"I attended the board meetings of November 26, 1974 and December 19,

1974 and did not make nor did I hear made a statement that the giving of reasons would ruin Plaintiff's reputation."

Following this meeting the defendant Liberatore called a special school board meeting for December 19, 1974, to consider rescission of the Board's action taken on November 26.

The meeting was held and a motion to rescind by Mr. Liberatore and seconded by Mr. Richter failed to pass with only Mr. Lively also voting for it.

During the meeting a number of people apparently demanded to know the reasons for the termination. The plaintiff claims that he himself "requested the reasons for the denial of tenure and my termination" and that "again, the board members present refused to give me the reasons and indicated that if the reasons were made known it would ruin my reputation" and that "the defendant (unidentified) indicated that a tape recording existed of a telephone conversation between a parent and himself which, if divulged to the public, would ruin my reputation."

With respect to this meeting, Mr. Ahrens states in his affidavit that:

"I never stated or heard anyone state that if reasons were given it would ruin Plaintiff's reputation. I do recall stating either to a reporter or to someone at the December 19 meeting that I would not give the reasons for a number of reasons including that it may harm someone's reputation and that I was not interested in doing that."

As indicated above, Mr. Ahrens is supported on this point by the defendant Melchers' affidavit. He is also supported on this by the defendant Frank Martin who swears that:

"I did not state that if the reasons were given Plaintiff it would ruin his reputation nor did anyone else to my knowledge."

The School Superintendent, Richard Morrow, in his affidavit states that:

"either Mr. Ahrens or Mr. Martin at one point said that 'We're not interest-ed in damaging the man's reputation' and therefore will not give the information requested. They also stated that counsel had recommended against giving the reasons. I do not recall anyone making the statement that giving the reasons would 'ruin' Mr. Turano's reputation."

Mr. Morrow adds at the end of his affidavit that:

"In the event that another school district or other prospective employer of Mr. Turano asks me for a recommendation I would feel constrained to give the man a good and positive one since I am in possession of no information to the contrary."

In addition to the foregoing, it is important to note that the contract between the Island Trees Teachers Association and the defendant Board of Education in Article XVIII–C–1–b provides as follows:

"Non-tenure teachers will be notified of termination of employment not later than May 15th, except that for the tenure year, the teacher will be notified not later than March 15th, prior to completion of probationary period."

Concededly plaintiff was never given notice of termination as provided for in said agreement.

Defendants' contentions a, b, c and e can be disposed of very quickly.

■ For the reasons set forth in this Court's opinion in *Lombard v. Board of Education*, 407 F.Supp. 1166 (1976) and *Buck v. The Board of Education, et al.*, (71 Civ. 954, Judd, J., July 16, 1975), this Court has jurisdiction of the corporate and individual defendants for the purposes of the equitable relief requested, and the sovereign immunity guaranteed by the Eleventh Amendment does not extend to the defendant Board to bar this action.

With respect to the sovereign immunity defense, Judge Judd in the *Buck* case held:

"Nor is *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), a bar to recovery here. In *Edelman*, the court said that the Elev-

enth Amendment bars the retroactive award of monetary relief—even under the rubric of 'equitable restitution'—where the money will come directly from the state treasury. However, both the Supreme Court and lower courts have recognized that inferior bodies do not partake of Eleventh Amendment immunity merely because they may receive some state funds. See *Edelman v. Jordan, supra,* 415 U.S. at 651, 94 S.Ct. at 1358 n.12; *Fay v. Fitzgerald,* 478 F.2d 181, 184 n.3 (2d Cir. 1973); *Forman v. Community Services, Inc., et al.,* 500 F.2d 1246 (2d Cir. 1974); *Smith v. Concordia Parish School Board,* 387 F.Supp. 887 (W.D. La.1975); *Young v. Hutchins,* 383 F.Supp. 1167 (M.D.Va.1974).

"The Board of Education is primarily an organ of the City of New York and is not an *alter ego* of the state such as to possess Eleventh Amendment immunity."

As in *Lombard,* plaintiff seeks only equitable relief in the form of reinstatement *nunc pro tunc* as of the date of his termination and does not seek damages from any of the defendants. In the light of *Fine v. City of New York, et al.,* 529 F.2d 70 (2d Cir. 1975), it is questionable whether *in any event* plaintiff could now amend his complaint and maintain a claim for damages.

■ Accordingly, we need not now be concerned with any question of "qualified good faith immunity" or whether defendants Liberatore, Lively, Richter and Fasullo are properly joined as defendants because no suit against them "individually" lies and they may be said to be sued here only in their capacity as "members of the Board of Education."

To the extent that the plaintiff feels it necessary and advisable to do so, he will be permitted to amend his complaint to allege that jurisdiction is also based upon 28 U.S.C. § 1331 and the Fourteenth Amendment to the Constitution.

With respect to plaintiff's penultimate ground (indicated as "f" above), namely whether he has been deprived of "liberty" or "property" without due process of

law, we will consider each of these questions separately.

■ On the question of "liberty", the law in this Circuit is that where a plaintiff's "good name, reputation, honor, or integrity is at stake" or "the State, in declining to re-employ [plaintiff], imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities", plaintiff may claim a deprivation of "liberty" under the due process clause of the Fourteenth Amendment. (*Board of Regents v. Roth,* 408 U.S. 564, at p. 573, 92 S.Ct. 2701, at p. 2707, 33 L.Ed.2d 548 (1972); *Lombard v. Board of Education,* 502 F.2d 631 (2d Cir. 1974) cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975) ). In addition, "a serious constitutional question arises if [plaintiff] has had no opportunity to meet the charge by confrontation in an adversary proceeding. (*Lombard v. Board of Education,* 502 F.2d 631 at pp. 637–38).

■ In the case at bar there is a serious factual question as to what, if anything, was said by one or more members of the Board as to why the Board was unwilling to give the reasons for the denial of tenure in his case. There is also a factual question as to whether whatever was said was provoked by the plaintiff or persons acting on behalf of the plaintiff, i. e., whether the alleged stigmatization was brought on by plaintiff's own action.

Accordingly, under *Lombard,* plaintiff should be given a trial to determine whether the defendants have violated his constitutional rights in this particular respect. That these factual disputes still exist make it necessary as well for the Court to reject defendants' contention g.

On the question of whether plaintiff has been deprived of a "property" right without due process of law in violation of the Fourteenth Amendment, it would appear under *Roth* that he has but to only a limited degree.

■ Under the union contract plaintiff was entitled to approximately three months notice prior to the completion of

his probationary period, presumably for the purpose of enabling him to make appropriate arrangements for another position in the ensuing academic year. No such notice apparently was given to the plaintiff in this case until November 26, 1974, when, of course, he was notified of his termination. This was a "property" right of which he was summarily deprived.

The value of such "property" right, however, is limited to plaintiff's salary as a probationary teacher for the balance of the 1974/75 academic year. Plaintiff does not claim that the delay in the notice of termination was in and of itself responsible for his failure to find new employment beyond that first academic year. Plaintiff will have an opportunity at trial to prove the extent of his actual damages from the delay in receiving notice.

■ That notice came late cannot, as plaintiff contends, operate as well to create tenure by acquiescence and estoppel. The law is clear that tenure may not be acquired by acquiescence and estoppel unless there is actual service beyond the term of probation which, of course, is not the case here. *Gunthorpe v. Board of Ed. of Union Free School District No. 5, Town of Babylon, Suffolk County*, 41 Misc.2d 757, 246 N.Y.S.2d 462 (S.Ct. Nassau Co. 1963); *Matter of Nyboe v. Allen*, 10 Misc.2d 895, 175 N.Y.S.2d 334 (S.Ct. Albany Co.), *aff'd*, 7 A.D.2d 822, 181 N.Y.S.2d 132 (3d Div. 1958).

Neither the failure to give notice nor the fact the plaintiff received favorable ratings during his probationary service created tenure in the plaintiff. "The exclusive power to grant tenure to teachers has been vested by Section 3013, subd. 2, of the Education Law in boards of education." *Brookhaven-Comsewogue School District v. Port Jefferson Station Teachers Association* (S.Ct. Suffolk Co. Index No. 75-7027 August 29, 1975 and cases cited therein).

Defendants also argue (contention d) that plaintiff has not exhausted his administrative remedies and that since the questions involved are primarily of State law, this Court should abstain from assuming jurisdiction, particularly if there is any possibility that the State law upon an issue raised is uncertain.

In particular, defendants claim that plaintiff did not file a grievance under the procedures provided for in the union contract which he claims has been violated nor has he proceeded before the Commissioner of Education on the question of denial of tenure to him.

■ It is clear, however, that exhaustion of such administrative remedies is not required in a case such as this brought under the Civil Rights Act, see *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Snead v. Department of Social Services*, 355 F.Supp. 764 (S.D.N.Y.1973) (3 judge court), *vacated on other grounds*, 416 U.S. 977, 94 S.Ct. 2376, 40 L.Ed.2d 755 (1974), *aff'd on other grounds*, 389 F.Supp. 935 (1975) (3 judge court), *vacated on other grounds*, 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975), and, as has been indicated, plaintiff may have one or more claims under a Federal Civil Rights Act and the U. S. Constitution.

Accordingly, both motions for summary judgment are denied with leave to the plaintiff to serve and file an amended complaint within twenty (20) days and to the defendants to amend their answer thereafter, if the parties so desire.

So ordered.

### SUPPLEMENTAL OPINION AND ORDER

On January 30, 1976, this Court denied a motion for summary judgment brought by defendants pursuant to Rule 56 of the Rules of Civil Procedure, and a cross-motion for summary judgment brought by plaintiff.

At pages 209–210 of the Opinion and Order denying the motions, the Court indicated that plaintiff would be entitled to recover from defendants if he could demonstrate that he actually suffered damages as a result of belated notice of termination of employment, which notice constituted a "property

right" under his union contract. It was thought that even if jurisdiction for such a claim could not be founded upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343, it might well be based directly upon the Fourteenth Amendment and 28 U.S.C. § 1331. See *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *City of Kenosha v. Bruno,* 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (Brennan and Marshall, JJ., concurring); *Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975); *Fine v. City of New York,* 529 F.2d 70 (2d Cir. 1975); *Buck v. Board of Education of City of New York,* 71 Civ. 954 (E.D.N.Y. July 16, 1975); *Lombard v. Board of Education of City of New York,* 407 F.Supp. 1166 (E.D.N.Y., 1976).

On March 8, 1976, the Court of Appeals issued an opinion in *Monell v. Department of Social Services of City of New York,* 532 F.2d 259 (2d Cir. 1976). That opinion held, in relevant part:

1) that the Board of Education of the City of New York is not a "person" within the meaning of 42 U.S.C. § 1983; and

2) that employees of a municipality may not be sued in their official capacities in an action for damages brought under § 1983.

The reasons[1] given by Judge Gurfein in his opinion for the Court also suggested that the rationale of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), should not be construed to allow suits for damages to be brought directly under the Fourteenth Amendment. The fashioning by courts of damage remedies for violations of constitutional rights, said the Supreme Court in *Bivens,* is not *required* by the Constitution, but merely *permitted* when all circumstances indicate that

such remedies are appropriate. While considering the creation of damage remedies for Fourth Amendment violations, the Supreme Court noted the absence of an

"explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress". *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, supra,* at p. 397, 91 S.Ct. at p. 2005, 29 L.Ed.2d at p. 627.

But *Monell,* especially at pp. 265, 266,[2] emphasized that such a congressional statement as to the inappropriateness of damage remedies against municipal bodies—and their employees in their official capacities—*does* exist, in the form of § 1983.

The end result is that no jurisdictional basis for a claim against defendant Board of Education[3] or its employees in their official capacities appears to exist under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and that the existence of such a basis under the Fourteenth Amendment and 28 U.S.C. § 1331 is to say the least very doubtful.[4]

While the caption in this case indicates that the members of the Board of Education are sued "individually and as members of the Board," it is not now clear that the complaint sufficiently alleges actions by Board members "outside the scope of their offices", or arbitrary or malicious actions by them, in such a way as to state a claim against the members in their individual capacities; see *Monell v. Department of Social Services of the City of New York, supra,* 532 F.2d at p. 264.

In its Opinion and Order of January 30, 1976, after the Court indicated that

1. See Appendix.

2. But see also p. 267.

3. The holding of *Monell* is probably that *no* school board is a "person" for § 1983 purposes, although attributes peculiar to the

Board for the City of New York may have figured in the Court's ruling.

4. No occasion has yet arisen for the Court to consider the implications for this case of the $10,000 amount-in-controversy requirement of § 1331.

plaintiff was entitled to recover damages because of the belated notice of termination given to him, it continued by characterizing such belated notice as a deprivation of a property right of which plaintiff was possessed by reason of the guarantees of the Teachers Association's contract. Defendants have since indicated that they object to, and wish to appeal from, this characterization.

Although now, as indicated above, the Court has substantial doubts whether plaintiff can maintain an action for money damages under either 42 U.S.C. § 1983 or the Fourteenth Amendment, this Court will not certify that question to the Court of Appeals because that question does not need to be resolved in this case at this time. It appears that plaintiff could in any event recover damages in a common law action for breach of contract. This Court is, of course, able under circumstances such as those present in this case to exercise pendent jurisdiction over such claims, *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As it stands, plaintiff's complaint does not properly set forth such a common law claim, but plaintiff may if he wishes to do so within 20 days from the date of this order amend his pleadings so as to state such a claim.

In consequence of the considerable uncertainty remaining in this Circuit after *Monell* as to whether an action for damages will lie against a Board of Education and its members under the Fourteenth Amendment and 28 U.S.C. § 1331, and in light of this Court's decision to exercise pendent jurisdiction over any forthcoming state law contract claim, the Court now supplements its Opinion and Order of January 30, 1976, so as to indicate

1) that the Opinion and Order of January 30, 1976 should not be construed as a resolution of the Fourteenth Amendment questions discussed above; and

2) that since in any event preparations for trial on plaintiff's other claims must go forward, and since plaintiff apparently may recover damages, if any, suffered as a result of the belated notification of termination in a pendent common law action for breach of contract,

the Court will at this time take no position on whether an action for damages may be brought directly under the Fourteenth Amendment or on whether such belated notification constitutes, in light of the provisions of the Teachers Association contract, a deprivation of property within the meaning of the Fourteenth Amendment.

We note finally that the controversy does not affect plaintiff's claims for *equitable* relief under the Fourteenth Amendment, including his claims for reinstatement *nunc pro tunc* to his teaching position.[5] *Monell* did not of course attempt to override the long lines of cases, following *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 51 L.Ed. 714 (1908), which approve affording equitable relief in actions brought directly under constitutional provisions.

SO ORDERED.

APPENDIX

The following quotation from *Monell v. Department of Social Services of the City of New York* bears on the advisability of permitting a damage remedy under 42 U.S.C. § 1983 against a municipal official when the municipality will pay the judgment. It may indicate what the Court of Appeals would say if asked to create a damage remedy under the Four-

---

**5.** Whereas a back pay claim standing alone was equated with damages in *Monell,* the Court at p. 267 explicitly distinguished that case from one in which reinstatement is also sought; see also *Flores v. Local 25, International Brotherhood of Electrical Workers, AFL–CIO,* 407 F.Supp. 218 (E.D.N.Y., 1976), and cases there cited.

The Court also notes that the very recent Supreme Court case of *Paul v. Davis,* —— U.S.

——, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 USLW 4337 (1976) does not appear to impair the Court's Opinion and Order dated January 30, 1976 wherein it was held that the imposition of a stigma in the course of a non-renewal of a probationary teacher's contract may constitute a deprivation of liberty under 42 U.S.C. § 1983 and the Fourteenth Amendment. (See 44 USLW at pp. 4340, et seq.)

teenth Amendment against municipalities.

Recognizing that the Eleventh Amendment, which bars suits against states in the federal courts, has no direct application to cities, see *Edelman v. Jordan,* 415 U.S. 651, ·667 n. 12, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662, 675 (1974), we nevertheless find a compelling analogy from cases arising under the Amendment.

In the landmark case of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that a state official threatening to enforce an unconstitutional state statute could be sued for injunctive relief despite his contention that he was merely a representative of the state and that, accordingly, a suit against him would be a suit against the state, which is barred by the Eleventh Amendment. The fiction upon which the *Young* decision is supported is that a suit against a state officer to restrain him from taking action in his official capacity is a suit against the individual officer and not against the state.

An action for money damages, as distinct from a suit for injunctive relief, can hardly be said "not [to] affect the state in its sovereign or governmental capacity," 209 U.S. at 159, 28 S.Ct. at 454, 52 L.Ed. at 729, if the state is required to pay the judgment. And, in such case, the bar of the Eleventh Amendment applies, even though the named defendant is the official rather than the state. See *Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355, 39 L.Ed.2d at 672; *Kennecott Copper Corp. v. State Tax Commission,* 327 U.S. 573, 577, 66 S.Ct. 745, 747, 90 L.Ed. 862, 866 (1946); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 462–64, 65 S.Ct. 347, 349–350, 89 L.Ed. 389, 393–394 (1945). See also *Fitzpatrick v. Bitzer,* 519 F.2d 559, 563–64 (2 Cir. 1975), *cert. granted,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404, 44 U.S.L.W. 3358 (1975); *Wilkerson v. Meskill,* 501 F.2d 297 (2 Cir. 1974). As the Court recently noted, "the doctrine of *Ex parte Young* is of no aid to a plaintiff seeking damages from the public treasury." *Scheuer v. Rhodes, supra,* 416 U.S. at 238, 94 S.Ct. at 1687, 40 L.Ed.2d at 97. The Court has established the principle, moreover, that in Eleventh Amendment cases "the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding," and that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury, supra,* 323 U.S. at 464, 65 S.Ct. at 350, 89 L.Ed. at 394.

There is no logical way to avoid a similar result when the damages which are sought in a § 1983 action will have to be paid by a city that was held not to be amenable to such an action in *Monroe v. Pape, supra.* As the legislative history recited by Mr. Justice Douglas demonstrates, municipalities were simply not to be subjected to damage suits under the Civil Rights Act. The fiction that permits equity relief under *Ex parte Young* loses its validity, as we have seen in the Eleventh Amendment cases, when the public body which is not amenable to suit is requested to pay the judgment. Just as the Congress which enacted the Eleventh Amendment in order to overrule *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), meant to protect the treasury of the states, so the Reconstruction Congress which enacted the Civil Rights Act sought to protect municipal treasuries.