Frank SANTORA and John S. Iannone, Plaintiffs,

v.

The CIVIL SERVICE COMMISSION, CITY OF NEW YORK, Alphonse E. D'Ambrose, Personnel Director and Chairman, Department of Personnel, Civil Service Commission, Anthony R. Ameruso, Commissioner of Highways, and Harrison J. Goldin, Comptroller, Defendants.

No. 76 Civ. 1695 (HFW).

United States District Court, S. D. New York.

April 4, 1977.

**26**

Marchi, Straniere &. Meyers, P. C., New York City, for plaintiffs; Jeremiah B. McKenna, Staten Island, N. Y., of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants; Kenneth Wolfe, New York City, of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

On April 12, 1976, plaintiffs filed this action to overturn the Department of Personnel's December, 1972 decision[1] removing them from allegedly tenured positions as District Foremen (Highway Maintenance) and requiring them to resume their previous positions as Foremen of Asphalt Workers. Defendants now seek to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure on the ground that the action is barred by both the controlling statutes of limitation and the doctrine of *res judicata*. Although the defense of *res judicata* seems meritless,[2] for reasons noted below, the court will dismiss the complaint.

---

1. The complaint recites both December 6 and December 9, 1972 as the date on which the Department made its determination. The latter date, however, appears to be the correct one.

2. Defendants contend that plaintiffs were members of the class in *Maurizio v. Bronstein*, 43 A.D.2d 825, 352 N.Y.S.2d 424 (1st Dep't 1974) (affirmance without opinion), however, they fail to aver that the claims raised here were determined on the merits in that action. For this reason alone, reliance on the doctrine of *res judicata* is misplaced. Moreover, although the record before the court is woefully inadequate, it also seems that *Maurizio* was never certified as a class action. Plaintiffs were therefore neither parties to that action nor privies of parties therein, and defendants have not met their burden of showing the meaning of the state trial court's judgment. *McNellis v. First Federal Savings and Loan Association*, 364 F.2d 251, 257 n.8 (2d Cir.), *cert. denied*, 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966).

The complaint alleges that defendants violated plaintiffs' rights under the due process and equal protection clauses of the fifth and fourteenth amendments by failing to afford them any hearing prior to demotion and by restricting eligibility for promotion to union employees. Plaintiffs seek to "review, vacate and annul" the Department of Personnel's action and in addition to $20,000 in damages further request "a declaratory judgment and writ of mandamus" directing their reinstatement as District Foremen. Jurisdiction for the court to hear claims pursuant to 42 U.S.C. § 1983 (1970) is alleged under 28 U.S.C. §§ 1343(3) and 1343(4) (1970); and for the court to hear constitutional claims, under 28 U.S.C. § 1331(a) (1970).

## DISCUSSION

The proper period of limitations to be applied to actions brought under either section 1983 or the fourteenth amendment must be determined by reference to the alternatives available to litigants bringing comparable suits in the courts of this state, with the controlling period ordinarily the one thought to be "most appropriate" under state law. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Fine v. City of New York*, 529 F.2d 70, 76–77 (2d Cir. 1975).

In this jurisdiction, it has been established beyond peradventure that the state statute of limitations applicable to section 1983 actions is the three-year period for actions "to recover upon a liability, penalty or forfeiture created or imposed by statute" found in section 214(2) of the New York Civil Practice Law and Rules (CPLR) (McKinney 1972). *E. g., Meyer v. Frank*, 550 F.2d 726 (2d Cir. 1977); *Kaiser v. Cahn*, 510 F.2d 282, 284 (2d Cir. 1974); *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Romer v. Leary*, 425 F.2d 186, 187 (2d Cir. 1970); *see Swan v. Board of Education*, 319 F.2d 56, 60 (2d Cir. 1963). Accordingly, since this action was instituted more than three years after the demotion took place, plaintiffs' section 1983 claim is time-barred and must be dismissed.[3]

Plaintiffs also seek to imply a cause of action against the City of New York directly from the fourteenth amendment with jurisdiction predicated upon 28 U.S.C. § 1331(a). Were this possible, the controlling statute of limitations would undoubtedly be the six-year period contained in the so-called "omnibus" clause[4] of CPLR § 213(1) (McKinney 1972), and the instant action would be seasonable. But it is this court's considered opinion that no such cause of action may be stated.

The Supreme Court did hold in *Bivens v. Six Unknown Named Agents of the Federal*

---

**3.** It seems that almost every section 1983 action brought in this jurisdiction against a municipality generates some discussion of the controlling state statute of limitations. Defendants generally, argue that the four-month period under CPLR § 217, governing challenges to administrative determinations, should be invoked as the most analogous state statute of limitations, while plaintiffs call upon the courts to reaffirm the *Romer* court's conclusion that the applicability of the three-year period under CPLR § 214(2) is "settled." *Romer v. Leary, supra*, 425 F.2d at 187. Plaintiffs here present an interesting argument, apparently of first impression, in support of an even longer period of limitations, but nevertheless an unavailing one. Plaintiffs note that, in determining whether or not to apply CPLR § 214(2), New York courts distinguish between suits based upon statutes imposing new substantive liabilities (to which § 214(2) would apply) and those in which the

relevant statute merely limits or otherwise channels a cause of action which would exist even in the absence of a statutory enactment (where another limitations period would control). *See City of Buffalo v. Maggio*, 21 N.Y.2d 1017, 291 N.Y.S.2d 1, 238 N.E.2d 494 (1968); *Clark v. Water Commissioners*, 148 N.Y. 1, 42 N.E. 414 (1895). Thus, application of CPLR § 214(2) would appear to be in error here *if* conduct violative of the fourteenth amendment may be addressed directly under § 1331(a) without any need to look to section 1983. However, in view of the court's conclusion, *infra*, that there is no such independent constitutional claim, CPLR § 214(2) remains as an insurmountable road block to relief under section 1983 for plaintiffs.

**4.** CPLR § 213(1) provides that "an action for which no limitation is specifically prescribed by law" "must be commenced within six years."

*Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that actions for damages against federal officers may be predicated directly on the fourth amendment without reliance upon a statutory springboard, but it is questionable, at best, whether the rationale of that case extends to the due process and equal protection clauses of the fourteenth amendment, which form the basis of the instant action, or to suits against nonfederal officers or agencies. *See generally* Dellinger, *Of Rights and Remedies: The Constitution as a Sword,* 85 Harv.L.Rev. 1532 (1972).

Although the issue has been addressed in this circuit by both the Court of Appeals and several district courts it remains unresolved. In *Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975), Judge Smith confidently declared for a divided Second Circuit panel that "the Braults' invocation of the Fourteenth Amendment's Due Process Clause as the source of their claim for relief comes within *Bivens'* sweeping approbation of constitutionally-based causes of action." *Id.* at 734 (Timbers, J., dissenting). However, the force of that statement is much attenuated by the Second Circuit's subsequent decision, on rehearing *en banc,* to dismiss the complaint on unrelated grounds for failure to state a cause of action.[5]

Since *Brault,* in *Fine v. City of New York, supra,* the Second Circuit again was presented with the question of whether substantive liability could be imposed directly under the fourteenth amendment. However, the *Fine* court never reached that question; rather, it remanded the action to the district court for a determination as to whether the fourteenth amendment claim would be time-barred under the most appropriate limitations period, even if it stat-

ed an otherwise sufficient cause of action.[6] In doing so, the Court of Appeals noted that it "should not reach out to decide constitutional questions unnecessarily." 529 F.2d at 76.

Thus, confronted with two appellate decisions indicative of the Second Circuit's reluctance to declare the limits of *Bivens,* the district courts of this circuit have attempted to resolve the question left unanswered by *Brault* and *Fine.* In *Mitchell v. Libby,* 409 F.Supp. 1098, 1099 (D.Vt.1976), Chief Judge Holden concluded, based on the *en banc* decision in *Brault,* that decisions rejecting suits under the fourteenth amendment "may be regarded as accurate reflections of the present state of the law in the Second Circuit." Similarly, although not required to resolve the issue, Judge Platt indicated in *Turano v. Board of Education,* 411 F.Supp. 205, 212 (E.D.N.Y.1976), that he had "substantial doubts" as to whether the plaintiff there could maintain an action for money damages under the fourteenth amendment.

Conversely, in *Savage v. Kibbee,* 426 F.Supp. 760 (S.D.N.Y.1976), this court read the *Brault* decision *en banc* more narrowly, commenting that "even if the defendants are not persons within the meaning of section 1983, jurisdiction to hear this cause of action may be found under 28 U.S.C. § 1331(a)." 426 F.Supp. at 766 . . . (dictum). Most assuredly, this is not an isolated view. *See Sanabria v. Village of Monticello,* 424 F.Supp. 402 (S.D.N.Y.1976) (Cannella, J.); *Second Circuit Review, 1974–75 Term—Federal Jurisdiction,* 42 Brooklyn L.Rev. 1097, 1117–18 n. 87 (1976). *But see Perzanowski v. Salvio,* 369 F.Supp. 223, 229 (D.Conn.1974) (Clarie, J.). I am

---

**5.** As Judge Oakes observed in his dissent in *Brault:*

> [W]hat the majority here describes as a failure to state a claim is in reality an adjudication on the merits that the Constitution affords no remedy to persons deprived of property by the incorrect application of state judicial authority.

527 F.2d at 741.

**6.** *Fine* involved a suit for more than $5 million in damages allegedly resulting from an illegal

search of an apartment. In remanding the action for further consideration, the Court of Appeals suggested that the action was controlled by "the one year and ninety day period of limitation provided by New York's General Municipal Law § 50–i, governing tort claims against municipalities." 529 F.2d at 76. Here, however, in the event they are cognizable, plaintiffs' constitutionally-based claims would seem to fall within a substantially longer period of limitations, as has already been noted.

persuaded, however, that the Second Circuit will hold *Bivens* inapplicable to claims asserted against officers and agencies of municipalities under the fourteenth amendment once it is squarely presented with the issue. Consequently, I conclude that plaintiffs' fourteenth amendment claim must be dismissed for failure to state a cause of action.

■ At the outset, I note that plaintiffs' constitutional claim, on its face, is neither frivolous nor interposed for the sole purpose of obtaining federal jurisdiction, and that defendants have not challenged the allegation that $10,000 is in controversy.[7] The court is therefore empowered, under the general federal question jurisdictional grant of section 1331(a), to proceed to a consideration of the merits of the complaint, *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and specifically, to a determination of whether it states an adequate cause of action. *See Snead v. Department of Social Services*, 409 F.Supp. 995 (D.C.1975) (three-judge court).

■ The issue then is quite simple: does the *Bivens* holding, that damages may be recovered against federal officers in a suit predicated solely on the fourth amendment, extend to a suit against municipal agencies and officers seeking relief directly under the fourteenth amendment? In answering this question, the exact language of the *Bivens* opinion is instructive. Although the Court stated that

" '. . . where legal rights have been invaded, and a federal statute provides for a general right to sue for such inva-

sion, federal courts may use any available remedy to make good the wrong done.' *Bell v. Hood*, 327 U.S., at 684, 66 S.Ct. [773] at 777 (footnote omitted),"

it was also careful to note that "*the present case involves no special factors counseling hesitation in the absence of affirmative action by Congress.*" 403 U.S. at 396, 91 S.Ct. at 2004 (emphasis added). Unlike *Bivens*, however, the case at bar does involve "special factors" which militate against a further expansion of direct liability under the Constitution.

First, plaintiffs here present a claim under the fourteenth (not the fourth) amendment. Yet the very structure of the fourteenth amendment suggests that claims under it are to be distinguished from claims arising under other amendments, since section 5 specifically grants the power of enforcement to Congress[8] rather than leaving the question unaddressed in the manner of other amendments to the Constitution. This distinction was noted when the fourteenth amendment was introduced in the Senate on May 23, 1866. Senator Howard of Michigan, one of the amendment's proponents, observed that

[Section 5] casts upon Congress the responsibility of seeing to it, for the future, that all the sections of the amendment are carried out in good faith, and that no state infringes the rights of persons or property. *I look upon this clause as indispensable* for the reason that it thus imposes upon Congress this power and this duty. Cong. Globe, 39th Cong. 1st Sess. 2768 (emphasis added).

Iannone has already met the jurisdictional amount requirement of section 1331(a). Thus, it cannot be said that "it is apparent to a legal certainty, that [plaintiffs] cannot recover the amount claimed," *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), and plaintiffs' good faith claim controls. *Id.* at 288, 58 S.Ct. 586, 82 L.Ed. at 848.

---

7. Although the complaint alleges in paragraph 9 that plaintiffs' demotions have already cost them each more than $2,500 in lost wages per annum, and therefore more than $10,000 to date, a supplemental memorandum of law submitted at the request of the court appears to belie that claim. Nevertheless, even without including possible pension benefits losses in the calculus, under the more accurate figures now before the court, it is apparent that plaintiffs each will have lost more than $10,000 in salary by early 1978. Moreover, plaintiff Iannone had been promoted to District Foreman at the time his demotion took effect. If the higher salary of that position is taken into consideration,

8. Section 5 of the fourteenth amendment states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

Similarly, in *Ex Parte Virginia*, 100 U.S. 339, 25 L.Ed. 676, decided in 1880, not long after ratification of the fourteenth amendment, Justice Strong noted that:

> All of the Amendments derive much of their force from [the 5th section of the Amendment]. It is not said the *judicial power* of the General Government shall extend to enforcing the prohibitions and to protecting the rights and immunities guaranteed. It is not said that branch of the government shall be authorized to declare void any action of a State in violation of the prohibitions. It is the power of Congress which has been enlarged. *Id.* at 345.

Justice Strong also observed that under section 5 of the fourteenth amendment, "Congress is authorized to enforce the prohibitions by appropriate legislation. *Some legislation is contemplated to make the Amendments fully effective.*" *Id.* (Emphasis added.)

Thus, the proponents of the fourteenth amendment not only planned to undertake, but also expressly provided for affirmative action by Congress as a first step to judicial enforcement of the rights secured by its adoption.

Furthermore, since passage of section 1983's predecessor, the Act of April 20, 1871, was intended to prevent maintenance of suits against municipalities in federal court, *City of Kenosha v. Bruno*, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape*, 365 U.S. 167, 191, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Congress surely has taken affirmative action which should now counsel hesitation by the court. Although it could be argued that the adoption of general federal question jurisdiction by the Act of March 3, 1875 (now codified in section 1331(a)) reflected a change in Congressional thinking, the court is of the view that such an interpretation would do violence to the actual intent of Congress, since the legislative history of the 1875 Act is noticeably devoid of any discussion of its effect on suits against municipalities. *See Snead v. Department of Social Services, supra,* 409 F.Supp. at 1001 (Mulli-

gan, J., concurring); *Perzanowski v. Salvio, supra,* 369 F.Supp. at 230. *But see Brault v. Town of Milton, supra,* 527 F.2d at 735 (opinion of the panel); *cf. Lynch v. Household Finance Corp.,* 405 U.S. 538, 546–48, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) (no indication that Congress intended to narrow the Act of 1871).

Judge Smith's opinion for the panel in *Brault* seeks to minimize the degree of conflict between the application of sections 1331(a) and 1983 by noting that municipal immunity from damage suits will remain inviolate as to actions involving less than the $10,000 jurisdictional amount necessary under section 1331(a). *Brault v. Town of Milton, supra,* 527 F.2d at 735. But it fails to explain why Congress would have wanted to carve out this peculiar jurisdictional island and is, for that reason unpersuasive. Similarly unexplained is why an essentially jurisdictional enactment should be taken as an expansion of carefully delimited statutory rights.

There is yet another "special factor," worthy of notice here which distinguishes the case at bar from *Bivens.* Although plaintiffs have acted with necessary caution in joining several natural defendants in order to overcome the limitations of section 1983's much-discussed requirement that civil rights suits be brought against a "person," *e. g., Monroe v. Pape, supra,* 365 U.S. at 187–91, 81 S.Ct. 473, the instant action is, in essence, one which is brought against a municipality. Consequently, it also brings into play considerations of federalism which were absent in *Bivens,* where there was clearly "very little to be gained" by proceeding with restraint. 403 U.S. at 409, 91 S.Ct. 1999 (Harlan, J., concurring).

And, finally, although it is certainly not dispositive, I do not think it inappropriate to note the likely effect that "discovering" a federal cause of action springing directly from the fourteenth amendment would have upon already burdensome federal trial-court dockets. As *Brault, Fine, Mitchell, Sanabria* and *Turano* demonstrate, many state law contract and tort claims may be rephrased in terms of the fourteenth

amendment. *Madison v. Wood*, 410 F.2d 564, 566 n. 3 (6th Cir. 1969). Accordingly, in situations where New York's omnibus period of limitations controls, as I believe would be the case here, plaintiffs would be able to pursue constitutionally-based causes of action under section 1331(a) well after their time to act had expired as to both state court actions and suits under section 1983. Dilatory conduct would thus be rewarded—inasmuch as direct actions under the fourteenth amendment would not be limited to defendants considered to be persons within the meaning of section 1983— and the fourteenth amendment would become a bottomless font of tort law. Most assuredly, the court would be rather reluctant to reach this result. *Cf. Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

The complaint is therefore dismissed.

SO ORDERED.