John F. LOMBARD, Plaintiff,

v.

The BOARD OF EDUCATION OF the CITY OF NEW YORK, and John A. Murphy, Defendants.

No. 72 Civ. 344.

United States District Court, E. D. New York.

Jan. 23, 1976.

Gene Ann Condon, New York City, for plaintiff.

W. Bernard Richland, Corp. Counsel, by Nancy E. Siegel, Asst. Corp. Counsel, New York City, for defendants.

## OPINION and ORDER

PLATT, District Judge.

Defendants have made an additional motion for an order pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure dismissing this action against the defendant Board of Education for lack of jurisdiction and for an order granting the defendants leave to amend their answer pursuant to Rule 15(a) of said Rules. The background and facts in this action are set forth in the opinion of the Circuit Court of Appeals (Gurfein, J.) reported at 502 F.2d 631 and will not be reiterated herein. The decisions of this Court on two prior motions made following the remand are reported at 400 F.Supp. 1361.

Suffice it to say that Lombard was a probationary teacher in his second year at Public School 151 in Queens, New York, when the principal, the defendant Murphy, submitted a report to the Board recommending that his probationary appointment be discontinued and that he be directed to submit to a medical examination to determine his fitness to teach. In this report the defendant Murphy made statements enumerating various acts which Lombard charges were false, made in bad faith and in retaliation and revenge for certain things done by Lombard.

In May of 1969 Lombard was examined by two staff physicians of the Board and in June of 1969 by a psychologist and was thereafter given an involuntary leave of absence until January of 1970. In the latter month and again in March of 1970 he was further examined and his leave of absence extended until June of 1970.

On April 20, 1970, a hearing was held before a committee of the Superintendent of Schools concerning Lombard's probationary status at which various witnesses gave unsworn oral testimony on his behalf and the committee had before it the reports by the principal and the recommendations of the physicians and psychologists. Following such hearing, the committee recommended that the probationary appointment be discontinued on the following five grounds:

(1) Illogical and disoriented conversation, causing request for examination by the Medical Department, which found him unfit for duty.

(2) Weakness in discipline and class control.

(3) Incompetent and ineffective instructional performance.

(4) Inattention to routine matters such as keeping records of pupil attendance, admission or discharges. Poor relations with Supervisors and Teachers.

(5) Violation of the By-Laws on Corporal Punishment. (A District Superintendent disapproved the defendant Murphy's charge in this respect on the ground of insufficient reliable evidence.)

Following Superintendent of Schools Irving Anker's approval of this report, School Board No. 23 adopted the same on June 11, 1970, to become effective September 10, 1970.

The basis for the first part of defendant Board of Education's motion to dismiss the action as to it is that the Board is not a "person" within the meaning of 42 U.S.C. 1983 and hence it cannot be held liable for either the damages or the equitable relief sought herein.

The complaint in the action, which was filed on March 16, 1972, alleges that "[t]his Court has jurisdiction of this action under title 28, section 1343(3), (4) of the United States Code, in that this is an action under title 42, section 1983 of the United States Code, in which the complaint demands equitable relief against the defendant Board of Education to redress its deprivation of plaintiff's rights secured by the Constitution of the United States, and the complaint demands money damages from the defendant, John A. Murphy, for his actions which deprived the plaintiff of rights secured by the Constitution of the United States."

In the third paragraph of the Wherefore clause the plaintiff asked for money damages in the sum of $200,000. against the defendant Murphy. In the last paragraph of the complaint (Para. 12) the plaintiff alleges that "[b]y terminating plaintiff's probationary appointment as a teacher in bad faith, and in retaliation and revenge for his having joined a labor union of teachers and used its assistance in filing grievances against the principal of the school, and by stating falsely that the plaintiff had committed acts and made statements showing prejudice against black pupils, and that the plaintiff had committed acts of bizarre behavior, and by blacklisting and disqualifying the plaintiff from employment in the public schools of the City of New York by the said Board's Special Circular No. 66, 1971, the defendants unconstitutionally deprived the plaintiff of his rights under the First and Fourteenth Amendments to the Constitution

of the United States freely to speak criticisms of the principal of his school, freely to associate with other teachers in a labor union of teachers, and to due process of law, and the equal protection of the laws."

In remanding the case for a trial after denying defendants' motion for a summary judgment, the Court of Appeals held that if the Board of Education grounded, in part, the plaintiff's termination as a probationary teacher on a charge of mental illness without first giving the plaintiff an appropriate adversary hearing, then the plaintiff might "claim a deprivation of liberty 'under the due process clause of the Fourteenth Amendment'" and concluded "that he should be given a trial in the District Court to determine whether [defendants] have violated his Federal constitutional rights."

The issues raised by the first part of defendants' present motion have recently been discussed by my learned colleague, The Hon. Orrin G. Judd, of this Court in *Buck v. Board of Education* (71 Civ. 954, July 16, 1975, not yet reported). The text of the pertinent portion of his opinion in such case is set forth in full herein because (i) it has not, as yet, been published, and (ii) it is clearly applicable to the issues raised herein:

"Jurisdiction over municipal agencies in civil rights actions has been limited recently as a result of the Supreme Court's holding in *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). On its second motion to vacate this court's prior order, the Board of Education asserts that the *City of Kenosha* case governs and requires dismissal against it, and that *James v. Board of Education,* 461 F.2d 566 (2d Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972) is no longer controlling. Defendant argues also that the *James* case was decided on the basis of violation of First Amendment rights, while in this case relief was granted only on the basis of a due process violation. However, back pay has been

awarded also for violations of due process. *Callaway v. Kirkland,* 334 F.Supp. 1034 (N.D.Ga.1971).

"Many cases decided since *City of Kenosha* have dismissed actions for damages against boards of education on the ground that such bodies, like municipalities, are not 'persons' under 42 U.S.C. § 1983. *Ingraham v. Wright,* 498 F.2d 248 (5th Cir. 1974); *Seaman v. Spring Lake Park Independent School District,* 387 F.Supp. 1168 (D.Minn.1974); *Howell v. Winn Parish School Board,* 377 F.Supp. 816 (W.D. La.1974); *Patton v. Conrad Area School District,* 388 F.Supp. 410 (D.Del.1975); *Weathers v. West Yuma County School District,* 387 F.Supp. 552 (D.Colo.1974).

"On the other hand, in *Keckeisen v. Independent School District,* 509 F.2d 1062 (8th Cir. 1975) the court distinguished a school board from a municipality, and held that the former was suable under § 1983. In *Singleton v. Vance County Board of Education,* 501 F.2d 429 (4th Cir. 1974), the court divided on the right to bring a § 1983 suit against a school board. Attorneys' fees were ordered and a direction for back pay was approved in *Cornist v. Richland Parish School Board,* 495 F.2d 189 (5th Cir. 1974), after *Kenosha.* Back pay has been ordered for another New York City employee who was dismissed without due process. *Vega v. Civil Service Commission,* 385 F.Supp. 1376 (S.D.N.Y. 1974). Moreover, the Supreme Court, after *Kenosha,* reinstated an order granting back pay in *Cleveland Board of Education v. La Fleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), *rev'g same case,* 474 F.2d 395 (4th Cir. 1973), *rev'g Cohen v. Chesterfield County School Board,* 326 F.Supp. 1159 (E.D.Va.1971).

"The Court of Appeals in this circuit has not dealt with the question, although in *Forman v. Community Services, Inc.,* 500 F.2d 1246 (2d Cir. 1974), in dealing with a claim against the New York State Housing Finance Agency under Section 1983, it stated that

> While municipal corporations, that is municipalities, are not deemed 'persons' under the Civil Rights Act . . . 'agencies' have always been so deemed.

No problem under the *City of Kenosha* case was mentioned by either of two completely different panels in two other decisions which remanded § 1983 actions for determination on the merits. *Lombard v. Board of Education,* 502 F.2d 631 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656; *Newman v. Board of Education,* 508 F.2d 277, (2d Cir. January 6, 1975), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762.

*"Jurisdiction Under 28 U.S.C. § 1331*

"The question of jurisdiction over the New York City Board of Education under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 need not be decided if federal question jurisdiction exists under 28 U.S.C. § 1331(a). The necessary $10,000 jurisdictional amount is present in this case. Where there is an invasion of constitutional rights the courts have the inherent power to grant adequate relief, as was held in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

"Jurisdiction over school bodies and relief against them have been upheld under § 1331. *Roane v. Callisburg Independent School District,* 511 F.2d 633 (5th Cir. 1975); *Cardinale v. Washington Technical Institute,* 163 U.S. App.D.C. 123, 500 F.2d 791 (D.C.Cir. 1974); *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3d Cir. 1974); *Patterson v. City of Chester,* 389 F.Supp. 1093 (E.D.Penna. 1975). Cf. *Adams v. Duvan County School Board,* 511 F.2d 690 (5th Cir. 1975).

"Recognizing jurisdiction under § 1331 is in no way inconsistent with the *City of Kenosha* case. On the con-

trary, the court there directed the district court on remand to make findings on that question, because the stipulations of fact had failed to specify the amount in controversy. 412 U.S. at 514, 93 S.Ct. at 2227.

"Recently, in *Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975), the Court of Appeals for this circuit applied the *Bivens* rationale to a case alleging a due process violation by a city. The court permitted a monetary recovery under § 1331, saying that municipalities have no 'special status which would immunize them from suits to redress deprivations of federal constitutional rights.' At 755.

"In a *pro se* complaint the fact that reference was made only to § 1343 does not prevent the court utilizing § 1331 to preserve rights which had been asserted two years before the *City of Kenosha* case was decided.

"Other cases amply demonstrate that the *Bivens* rationale is not limited to Fourth Amendment cases, but can be the basis for monetary recovery for violations of a number of constitutional rights. See, *e. g., States Marine Lines, Inc. v. Schultz,* 498 F.2d 1146 (4th Cir. 1974); *United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir. 1972); *Patterson v. City of Chester,* 389 F.Supp. 1093 (E.D.Pa.1975); *Butler v. United States,* 365 F.Supp. 1035 (D.Haw.1973)."

■ From the foregoing it would seem that jurisdiction over the defendant Board of Education in this case may lie under 42 U.S.C. § 1983 in that school boards may in this Circuit be considered "persons" within the meaning of that section; but even if it does not, jurisdiction would appear to exist under 28 U.S.C. § 1331(a) under the *Bivens* rationale.

It is true that plaintiff's original complaint alleged that jurisdiction was based solely on 28 U.S.C. § 1343(3), (4) and 42 U.S.C. § 1983 and did not predicate jurisdiction in any way upon 28 U.S.C. § 1331(a). However, in July of 1973, in response to the dismissal of his com-

plaint by this Court on June 20, 1973 on the ground of *res judicata,* the plaintiff moved for an order pursuant to Rule 15 of the Federal Rules of Civil Procedure granting the plaintiff leave to amend the complaint, so as to add at the end of paragraph 1 thereof the following allegation:

"This Court also has jurisdiction of this action under 28 U.S.C. § 1331, in that the matter in controversy exceeds the sum or value of $10,000.00, exclusive of interest and costs, and arises under the First and Fourteenth Amendments of the Constitution of the United States".

In a brief accompanying said motion plaintiff's counsel expressly stated that "as against the Board of Education plaintiff does not seek money damages, but only equitable relief, consisting of reinstatement to his position."

■ It does not appear from this Court's file that this motion was ever acted upon. In the light of the development of the law since plaintiff's complaint was filed herein, and in the interest of substantial justice, the Court feels that this motion should be granted and that plaintiff's complaint should be amended accordingly, particularly since such amendment will not raise the question of a claim for money damages against the Board of Education where jurisdiction is based on 28 U.S.C. § 1331 and the Fourteenth Amendment. See *Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *City of Kenosha v. Bruno,* 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

In this connection, it should be noted that even if plaintiff now wished to amend his complaint further to make a claim for such money damages, in all probability he would be held to be time-barred. *Fine v. The City of New York, et al.,* 529 F.2d 70 (2d Cir. 1975).

It is perhaps significant to note that the limitation provisions indicated in the *Fine* decision (viz, New York General

Municipal Law § 50–i) would appear to be applicable to money damage claims but not to a claim for equitable relief such as that of the plaintiff. See *Swan v. Board of Higher Education of City of New York,* 319 F.2d 56, 60 (2d Cir. 1963); *Beyer v. Werner,* 299 F.Supp. 967 (E.D. N.Y.1969); *Montagna v. O'Hagan,* 402 F.Supp. 178 (E.D.N.Y.1975).

In all of these cases the applicable statute of limitations in civil rights actions for injunctive relief has been held to be the State limitation statute governing actions based upon a liability created by statute, which in New York is § 214(2) of the New York CPLR providing for a three-year limitation period.

Again in the interest of justice, the defendants will, if they wish, be permitted to amend their answer to include a defense of the applicable statute of limitations; but, as indicated, the applicable statute with respect to plaintiff's present amended complaint would appear to be three years, and hence at present at least it would be a futile act.

The parties have also raised the question whether plaintiff is entitled to a jury trial on all, any or none of the issues to be decided when the case is reached for trial.

In view of the fact that any damage action by the plaintiff against the School Board is in all probability time-barred, the only issue remaining against the Board is the equitable action with respect to plaintiff's entitlement to reinstatement and on this issue, of course, plaintiff is not entitled to a jury trial.

This brings us to the plaintiff's action against the defendant Murphy. Given the present posture of the law and of this case, the Court does not understand what basis there is for a federal claim against the defendant Murphy. It is not claimed that he published any stigmatizing statements concerning the plaintiff or any statements damaging to plaintiff's reputation, good name, etc.; nor is he alleged to have "blacklisted" the plaintiff. To the extent that he made his recommendations to the Board,

and acted in the course of his official duties in performing the acts which he did, he has not violated any of plaintiff's constitutional rights. It was the Board that should have given the plaintiff an adversary hearing under the Due Process clause to clear his reputation, good name, etc., and to enable him to attempt to eliminate any stigma, not the defendant Murphy.

In plaintiff's present complaint against Murphy he alleges that "[i]n bad faith and in retaliation and revenge" for certain actions by the plaintiff, "on March 28, 1969 and thereafter, the said John A. Murphy made written reports concerning the plaintiff in which he stated falsely that the plaintiff had committed acts and made statements showing prejudice against black pupils, and that the plaintiff committed acts of bizarre behavior, in that, among other things, plaintiff allegedly kicked some pupils, hit other pupils, used obscene language to children, asked that heat be provided to his classroom, and failed to punch his time card properly; and the said John A. Murphy rated the plaintiff 'Unsatisfactory' as a teacher; he recommended discontinuance of plaintiff's probationary appointment; and he recommended that plaintiff be directed to submit to medical examination to determine his mental fitness to perform the duties of a teacher * * * [and to corroborate the same, the said defendant] asked parents of pupils taught by plaintiff to make false statements" supporting the foregoing, and that he "intimidated and caused several pupils to write false statements which he submitted to his superiors * * * and he did not correct or withdraw such false statements after some parents protested to him that such statements were false, and that he had wrongfully [so] intimidated and coerced their children".

It may possibly be that plaintiff may have had a claim against the defendant Murphy for libel, slander or false words causing special damages in the State Court but there is no jurisdiction of any such claim in this Court. Moreover, even if there were some argu-

able jurisdiction under a Federal Civil Rights Act, the Court would be required under *Fine v. City of New York, et al., supra,* to apply the "most appropriate" limitation period "provided by State law" which in this case appears to be one year under CPLR § 215(3). Accordingly, it would appear that in any event any such claim of the plaintiff against Murphy would be time-barred.

It should perhaps be noted that the claim against Murphy was never really treated by the Court of Appeals. While the reversal and remand was against both defendants, the different nature of the two claims was apparently not considered.

It follows from the foregoing that this action must be dismissed as to defendant Murphy. Plaintiff will be permitted to amend his complaint within 20 days to state a claim for equitable relief against the Board of Education under 28 U.S.C. § 1331 and the First and Fourteenth Amendments. The Board of Education may serve and file an amended answer to the amended complaint asserting any defenses it sees fit now to interpose in the light of recent developments. The Board's motion for dismissal and leave to amend is otherwise denied. This case will proceed to trial, without a jury, as soon as possible to determine whether equitable relief for the plaintiff is appropriate.

So ordered.