Alicia Pareha SAVAGE, Plaintiff,

v.

Robert J. KIBBEE, Individually and as Chancellor of the City University of New York, et al., Defendants.

No. 75 Civ. 4358 (HFW).

United States District Court, S. D. New York.

Nov. 11, 1976.

Alicia Pareha Savage, pro se.

W. Bernard Richland, Corp. Counsel, New York City by Jeffrey S. Laden, Asst. Corp. Counsel, New York City, of counsel, for defendants.

WERKER, District Judge.

In this employment discrimination action, the defendants have made a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on the following grounds: (1) that the claims interposed under 42 U.S.C. §§ 1981, 1983 were not filed within the applicable period of limitation; (2) that the

claims under 42 U.S.C. § 2000e–5 are barred for failure to make a timely complaint to the Equal Employment Opportunity Commission; (3) that because the defendants are not persons within the meaning of 42 U.S.C. § 1983, the court lacks jurisdiction under 28 U.S.C. § 1343 as to claims for damages; (4) that insofar as the defendants are sued in their individual capacities no discriminatory acts personally committed by the defendants have been alleged; (5) that plaintiff's claim for wages is not within the pendent jurisdiction of this court; (6) that plaintiff failed to bring her claim for wages under the grievance and arbitration procedure of the applicable collective bargaining agreement, which was the only remedy available to her; and (7) that the complaint fails to state a claim upon which relief can be granted. The plaintiff has cross-moved for summary judgment on her pendent claim for accrued annual leave, an award of attorneys fees and expenses pursuant to Rule 56(g), Fed.R.Civ.P., and leave to renew her request for a preliminary injunction.

## BACKGROUND

Plaintiff is a forty-six year old woman of Spanish, Malay and Oriental ancestry who was formerly employed by Hunter College of the City University of New York. She began her work at Hunter College in 1965 as a college office assistant charged with the preparation of information bulletins and class schedules for the School of General Studies and through a series of civil service examinations and advancements in her level of educational attainment was able to rise in civil service rank. In 1970, plaintiff tendered her resignation because she believed that her title and salary did not correspond to her work responsibilities. Specifically, plaintiff felt that she had been performing tasks generally assigned to an assistant dean.

James Williams, then the Dean of the School of General Studies persuaded the

plaintiff to rescind her resignation. In return, she was appointed to the faculty of Hunter College on July 6, 1970 as a full-time Lecturer assigned to the Office of the Dean. During the five years that plaintiff was a Lecturer, she taught only one course during one semester; she also served the School of General Studies as Director of Adult Education.

The collective bargaining agreement for instructional staff at the City University of New York ("Agreement") provides that full-time lecturers "shall be eligible for a certificate of continuous employment upon a sixth full-time appointment in the title of Lecturer (full-time) preceded by five years of continuous full-time service."[1] If granted, the certificate entitles a lecturer to continued reappointment at that college subject, inter alia, to satisfactory performance of tasks, stability of enrollments and financial ability.[2] Appointment of the plaintiff as a full-time lecturer for the 1975–76 academic year would therefore have entitled her to continuing reappointment at Hunter College. However, on June 12, 1974, Provost Douglas Maynard of Hunter College wrote to Richard Huber, then the Dean of the School of General Studies, as follows:

". . . Mrs. Savage is about to enter her fifth year as lecturer. It seems clear that the title of lecturer is not the proper title for the position she holds and the duties she performs. The title of lecturer is designed for people whose primary duties are classroom teaching. You are asked, therefore, to inform Mrs. Savage that she cannot be reappointed for the year 1975–1976 in the title of lecturer."

His memorandum indicated that the plaintiff might be appointed as an "Assistant to HEO," a supervisory administrative position which would not have entitled her to either tenure or a certificate of continuous appointment.

After conferences with Dean Huber, the plaintiff concluded that Provost Maynard

---

1. October 1, 1973 Agreement between the Board of Higher Education of the City of New York and Professional Staff Congress/CUNY, Article 12, Section 12.1.

2. Id. Section 12.3.

would not permit her reappointment for a sixth year as full-time lecturer. On June 26, 1974, she therefore filed with the New York State Division of Human Rights ("Division") a complaint which charged Hunter College and Provost Maynard with inequality in the terms, conditions and privileges of her employment because of her age, race, color, national origin and sex. That complaint is still pending before the Division.[3] The plaintiff filed a similar charge with the Equal Employment Opportunity Commission ("EEOC") on August 28, 1975 and a "right to sue letter" was issued to the plaintiff on March 30, 1976.[4]

The instant action was filed on September 4, 1976. It names the following persons as defendants: Robert J. Kibbee, Chancellor of the City University of New York; Jacqueline Wexler, President of Hunter College of the City University of New York; Douglas Maynard, former Provost and Vice-President of Hunter College; and Jerome Schneewind, present Provost and Vice-President of Hunter College. The defendants are sued both individually and in their official capacities. The complaint was drafted with the assistance of counsel, but plaintiff is presently proceeding *pro se.*

### TIMELINESS OF CLAIMS UNDER 42 U.S.C. § 1981 AND 42 U.S.C. § 1983

■ The defendants contend that the plaintiff failed to bring her civil rights causes of action under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 within the time allowed by the state statute of limitations that should

govern such suits. I disagree. There is no Federal statute limiting the time to bring an action under either section. Thus, the time period to be employed must be determined by reference to the most appropriate provision of New York State law. *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *O'Sullivan v. Felix,* 233 U.S. 318, 322, 34 S.Ct. 596, 58 L.Ed. 980 (1914). Since *Swan v. Board of Higher Education,* 319 F.2d 56 (2d Cir. 1963), several decisions have held that under section 214(2) of the New York Civil Practice Law and Rules (CPLR) the three year period governing actions to recover "upon a liability, penalty or forfeiture created or imposed by statute . . ." is the most appropriate time period to employ. *See, e. g., Kaiser v. Cahn,* 510 F.2d 282, 284 (2d Cir. 1974). In fact, the question was termed "settled" in *Romer v. Leary,* 425 F.2d 186, 187 (2d Cir. 1970), an action brought under 42 U.S.C. § 1983.

Counsel for the defendants suggests, however, that there exists a more appropriate statute of limitations which has yet to be considered by the courts of this circuit, namely section 297(5) of the New York Executive Law. Frankly, I am not surprised that prior lawsuits have not considered the applicability of that statute. Section 297, which is part of the New York Human Rights Law, specifies the procedures to be followed in filing and prosecuting a complaint before the Division, an administrative agency of the state empowered to investigate and determine the merit of alleged "unlawful discriminatory practices."

---

**3.** On October 28, 1974, the Division found that: "Mrs. Savage was not chosen for the position she desired because she did not possess the formal qualifications required for the position, not because of her race, color, sex, age, or national origin."
Plaintiff filed a Notice of Appeal with the State Human Rights Appeal Board on November 12, 1974. On June 30, 1975 the Appeal Board reversed and vacated the decision of the Division. The action was remanded to the Division for further proceedings, but there is no indication that the Division has taken any further action.

**4.** The instant action was filed before the plaintiff received a right to sue letter. Since the

court therefore lacked jurisdiction to hear causes of action stated under Title VI and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000d, 2000e, the court dismissed those causes on October 16, 1975. The plaintiff was given leave to renew her claims after receipt of the right to sue letter; when she produced the letter at a pre-trial conference held on March 31, 1976, I granted her leave to amend the complaint. Although an order reinstating the Title VII cause of action has not been submitted, for the purposes of this opinion and order I have assumed that it is part of the complaint before me.

Subsection 5 of section 297 provides that complaints submitted for consideration *by the Division* must be "filed within one year after the alleged unlawful discriminatory practice." While 42 U.S.C. §§ 1981 and 1983 and the New York Human Rights Law share generally similar purposes,[5] use of the section 297(5) time period to limit a federal civil rights suit would be singularly inappropriate. The instant action has not been brought before an administrative agency. Moreover, as the defendant concedes there already is a federal counterpart to section 297(5) in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e). Thus, for those actions where federal courts might have looked to section 297(5) of the Human Rights Law, Congress has expressed its intent that a different period of limitations be controlling.

■ Section 214(2) of the CPLR expressly includes actions upon a statutory liability and it is that section which shall govern the right of the plaintiff herein to bring causes of action under 42 U.S.C. §§ 1981, 1983. Given this holding, I need not express any view as to the applicability of section 217 of the CPLR which establishes time limitations for the bringing of proceedings under CPLR Article 78. *See Romer, supra,* 425 F.2d at 187.

■ The gravamen of plaintiff's complaint is that her civil rights were violated by the continuing discriminatory practices of the defendants. The court concludes that such discrimination, if proven, must have continued through the last day that the plaintiff was employed at Hunter College. A college personnel report dated September 22, 1975 indicates that the plaintiff's appointment expired as of August 31, 1975. I therefore find that this suit filed on September 4, 1975, is well within the three year statute of limitations.

## TIMELINESS OF CLAIMS UNDER 42 U.S.C. § 2000e–5

■ The defendants also contend that the cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, is barred by the passage of time. In order to prosecute a federal action under Title VII a plaintiff generally must have filed a timely charge with the EEOC. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In instances where· a party initially files a complaint with a state agency, the EEOC charge is timely if it is filed with the EEOC

". . . by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier . . ." 42 U.S.C. § 2000e–5(e).

■ Since the Division still has the complaint of the plaintiff pending before it,[6] the earlier of the two periods must necessarily be three hundred days from the date the unlawful practice occurred. The charge filed with the EEOC alleges that the discriminatory practices of the defendants were continuing in nature. They therefore must have "occurred" until the plaintiff left the City University system on August 31, 1975. As a result, the charge before the EEOC was filed within 300 days from the occurrence of the unlawful practice and the Title VII cause of action is properly before this court.

## RECOVERY OF DAMAGES AGAINST THE DEFENDANTS

The defendants contend that they are immune from suit under the Eleventh

---

**5.** *Compare United States v. Cruikshank,* 92 U.S. 588, 592, 23 L.Ed. 588 (1875), and *McNeese v. Board of Education,* 373 U.S. 668, 671–72, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), *with* the statement of purpose contained in section 290 of the New York Executive Law.

**6.** *See* note 3 *supra.* It seems possible for both the Division and the EEOC to have jurisdiction over the same controversy at the same moment in time. *Voutsis v. Union Carbide Corp.,* 321 F.Supp. 830, 833 (S.D.N.Y.) (dictum), *rev'd on other grounds,* 452 F.2d 889 (2d Cir. 1971), *cert. denied,* 406 U.S. 918, 92 S.Ct., 1768, 32 L.Ed.2d 117 (1972).

Amendment. Closely related to this claim is their assertion that insofar as they are sued for damages in their official capacities they are not "persons" within the meaning of 42 U.S.C. § 1983. They also contend that they are not liable as individuals because the complaint fails to allege that they have committed any acts of discrimination against the plaintiff.

■ The claim to Eleventh Amendment immunity is without merit. This is not an action against the Board of Higher Education ("Board"). Even if it were the court would not be bound, as the defendants contend, by the statement in *Board of Higher Education v. Carter,* 14 N.Y.2d 138, 146, 250 N.Y.S.2d 33, 35, 199 N.E.2d 141 (1964), that the Board "is a State agency." Whether the state is the real party in interest is a matter to be determined under federal law. *Gordenstein v. University of Delaware,* 381 F.Supp. 718, 720 (D.Del. 1974). Of the numerous factors including state law which must be considered the most important criterion is that of "ultimate state liability." *George R. Whitten, Jr., Inc. v. State University Construction Fund,* 493 F.2d 177, 179–80 (1st Cir. 1974); *Gordenstein, supra,* 381 F.Supp. at 720–21. Under section 6211 of the New York Education Law, the Board must save harmless members of the teaching and supervisory staffs of the University who are found to be liable for damages sustained in the discharge of duties within the scope of their employment. However, the City of New York controls the budget of the City University system and the state's matching share of that budget is fixed by statute. Education Law § 6215. A judgment paid by the City University would therefore only have an ancillary effect on the state treasury. *Gordenstein, supra,* 381 F.Supp. at 721. That is not enough to invoke the protective cloak of the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ Equally meritless is the contention of the defendants that, as far as damages against them as officials are concerned, they are not "persons" under section 1983.

It has been held that a state is not a person within the meaning of section 1983. *Meyer v. New York,* 344 F.Supp. 1377, 1378 (S.D. N.Y.), *aff'd,* 463 F.2d 424 (2d Cir. 1972). Political subdivisions of states are also excluded from coverage. *Monroe v. Pape,* 365 U.S. 167, 191, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, it is by no means clear that damages may not be recovered from the defendants here in their official capacities merely because the City University performs a governmental function.

■ The defendants rely on *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), for the proposition that an award of damages against the defendants as officials would be improper. Since that decision, however, the Supreme Court has reinstated an order granting back pay in *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) *rev'g* 474 F.2d 395 (4th Cir. 1973), *rev'g Cohen v. Chesterfield County School Board,* 326 F.Supp. 1159 (E.D.Va.1971). In this district, back pay has been awarded after *Kenosha* for the dismissal of a New York City employee without due process. *Vega v. Civil Service Commission,* 385 F.Supp. 1376 (S.D.N.Y. 1974). *See generally Lombard v. Board of Education,* 407 F.Supp. 1166, 1168–69 (E.D. N.Y.1976). The Court of Appeals for this circuit has also observed in a section 1983 case that "agencies" of municipal corporations are persons within the meaning of that section. *Forman v. Community Services, Inc.,* 500 F.2d 1246, 1255 (2d Cir. 1974), *rev'd on other grounds, sub nom. United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). Thus, even if this suit were deemed to be one against an agency of a municipality recovery of damages would not be precluded.

Reliance upon *Egelston v. State University of New York at Geneseo,* No. 75–9 (W.D. N.Y.1975), *rev'd,* 535 F.2d 752 (2d Cir. 1976), and *Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378 (E.D.Va.1974), is similarly misplaced. There, the defendants were agencies of the state and their

officials. The instant action, however, has not been brought against either the state or an agency or official of the state.

*Harkless v. Sweeny Independent School District,* 388 F.Supp. 738 (S.D.Tex.1975), cited by the defendants, is also inapposite. In a prior decision in *Harkless* by the Court of Appeals for the Fifth Circuit, the court observed that a Texas school district "is of the nature of a municipality." *Harkless v. Sweeny Independent School District,* 427 F.2d 319 (5th Cir. 1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). This was the basis for the district court's subsequent decision that the school district was not a person against whom an action under section 1983 could be maintained. Here, of course, the defendants are not municipalities. Even if the City University is deemed to be the real party in interest, it is at best an agency of a municipality which is subject to suit under section 1983. *Forman v. Community Services, Inc., supra.*

■ Moreover, the complaint in this action also alleges jurisdiction pursuant to 28 U.S.C. § 1331 to hear a cause of action under the due process and equal protection clauses of the Fourteenth Amendment. The plaintiff earned an annual salary to $17,550 at the time of her termination in 1975. There is therefore no reason to believe that the $10,000 jurisdictional amount required under 28 U.S.C. § 1331(a) has not been met.

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), a suit brought, *inter alia,* under section 1331(a), the Court held that money damages could be recovered for injuries resulting from the violation of constitutional rights. The Second Circuit extended *Bivens* to a suit alleging violation of due process by a city in *Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975) although the complaint therein was later dismissed on other grounds on rehearing *en banc. Id.* at 736–41. *Bivens* has also been applied to claims involving a number of different constitutional protections. *See* cases cited in *Buck v. Board of Education,* Civ. No. 71–

954 (E.D.N.Y. July 16, 1975), *quoted in part* in *Lombard, supra,* 407 F.Supp. at 1170. Thus, even if the defendants are not persons within the meaning of section 1983, jurisdiction to hear this action may be found under 28 U.S.C. § 1331(a). *Lombard, supra.*

### DISCRIMINATORY ACTS OF THE DEFENDANTS ACTING AS INDIVIDUALS

■ The defendants maintain that the complaint fails to allege discriminatory acts undertaken by them in their individual capacities. The complaint alleges that at the time plaintiff was terminated defendant Wexler recommended that tenure "in the form of a Certificate of Continuous Employment" be given to white faculty members (including lecturers) who by implication had less experience, equivalent credentials and no teaching duties. The complaint also alleges that defendant Maynard instructed plaintiff's supervisor that plaintiff was not be to reappointed as a lecturer (full-time) for the 1975–76 academic year. It is further alleged that defendant Kibbee promulgated a Tenure Quota Policy that resulted in the termination of minority group junior faculty members and "the perpetuation of a predominantly male general faculty." Defendant Kibbee's duties under Executive Order No. 11246, 30 Fed.Reg. 12319 (1965) are cited, as are the findings of his "Advisory Committee on the Status of Women at the City University of New York." Defendant Schneewind appears only in the caption of the complaint; he is apparently named as the successor to defendant Maynard in the position of Provost and Vice President of Hunter College.

Clearly defendant Schneewind cannot have discriminated against the plaintiff at the time in question. As to him, then, there can be no individual liability.

■ Plaintiff has also not specifically alleged that defendant Kibbee abrogated her rights under 42 U.S.C. §§ 1981, 1983. The tenure quota policy he allegedly promulgated was rescinded before plaintiff's

supervisor was informed of the need to change the status of the plaintiff. Moreover, it was enacted by the Board, not by the unilateral action of defendant Kibbee, and it did not apply to lecturers. Defendant Kibbee's duties under Executive Order 11246, which could only have arisen in his official capacity, do not provide the basis for a private cause of action. *Weise v. Syracuse University,* 522 F.2d 397, 411 n. 23 (2d Cir. 1975). The advisory committee report cited by the plaintiff found a pattern of discrimination within the City University, but the complaint does not demonstrate that defendant Kibbee was to blame. Finally, while the complaint alleges that defendant Kibbee failed to take affirmative action to correct discriminatory conditions, this does not amount to an allegation that he was personally involved in the termination of the plaintiff. I conclude therefore that defendant Kibbee can only be held liable under 42 U.S.C. §§ 1981, 1983 in his official capacity.

The allegations that defendant Wexler failed as President of Hunter College to implement an affirmative action program and that she recommended others for a sixth year of reappointment suffer similar shortcomings. For this reason, the causes of action stated under 42 U.S.C. §§ 1981, 1983 may only be maintained against defendant Wexler as an official of Hunter College.

With respect to defendant Maynard, the complaint does allege that his actions led to the termination of the plaintiff. However, he too could only have caused her not to be reappointed by acting in his official capacity. Thus, the claims under 42 U.S.C. §§ 1981, 1983 against him as an individual are also dismissed.

## UNUSED ANNUAL LEAVE

The plaintiff has also brought a pendent cause of action to recover the monetary equivalent of approximately 150 days of unused vacation time. The defendants contend that this claim is barred by the failure of the plaintiff to exhaust her administrative remedies under the grievance and arbitration provisions of the Agreement covering instructional staff.

An employee claiming rights under a collective bargaining agreement, must in the first instance attempt to gain redress under the procedures stipulated in that agreement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Section 20.1 of Article 20 of the Agreement herein provides in part that "the orderly processes hereinafter set forth will be the *sole* method used for the resolution of all complaints and grievances" (emphasis added). The plaintiff has not shown that she made any attempt to resolve her annual leave claim under the procedures provided in the Agreement. Indeed, she admits that she did not avail herself of the grievance process.

*Board of Higher Education v. Professional Staff Congress/CUNY,* 80 Misc.2d 297, 362 N.Y.S.2d 985 (N.Y.Sup.Ct., 1975), apparently cited by plaintiff in support of her contention that she need not have employed the grievance procedure before bringing this pendent claim is inapposite. In that case, grievances alleging violations of article 8 of the Agreement were not processed by the Board because the grievants had also resorted to other forums. Section 20.7 of Article 20 of the Agreement provides that grievances under Article 8, which contains anti-discrimination provisions, will not be processed on behalf of an employee who files a related claim before a court or governmental agency. Plaintiff's grievance or complaint with respect to accrued annual leave would not have fallen within the provisions of Article 8 of the Agreement. There is therefore no merit to her contention that resort to the grievance procedure would have been futile. Because she should have pursued her remedies under the Agreement, plaintiff's pendent claim for annual leave is dismissed and her motion for summary judgment on that claim is denied.[7]

---

**7.** Even if plaintiff did not have to follow the grievance procedure set forth in the Agreement, she has not shown any entitlement to accrued annual leave under the Agreement or any other document.

## OTHER RELIEF

Plaintiff has moved for an award of all attorneys fees and expenses accrued to date in this action under Rule 56(g) of the Federal Rules of Civil Procedure. That rule permits the court to order the payment of costs incurred in answering *affidavits* submitted in bad faith or solely for delay as part of a summary judgment motion. Plaintiff has not, however, pointed to any objectionable affidavits and I conclude that there are none.

Plaintiff also seeks leave to renew her request for a preliminary injunction. She has not presented additional facts which would cause me to reconsider my earlier oral decision that a preliminary injunction shall not issue. Her request is therefore denied.

SUBMIT ORDER.