John A. LOMBARD, Plaintiff,

v.

**The BOARD OF EDUCATION OF the CITY OF NEW YORK and John A. Murphy, Defendants.**

**No. 72 C 344.**

United States District Court,
E. D. New York.

Nov. 15, 1977.

See also, D.C., 407 F.Supp. 1166.

Joan Goldberg, New York City, for plaintiff.

W. Bernard Richland, Corp. Counsel, by Rosemary Carroll, Asst. Corp. Counsel, New York City, for defendants.

## DECISION AND ORDER

PLATT, District Judge.

On March 16, 1972, plaintiff commenced this action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), (4) alleging an unconstitutional violation of his civil rights by the defendant Board and seeking reinstatement as a teacher and an award of all back pay due him and in addition money damages from a former defendant John A. Murphy, the principal of the school where the plaintiff had been teaching.

The pertinent facts are as follows:

On September 1, 1966, plaintiff received a conditional license as substitute teacher, day elementary school, common branches; on October 8, 1968, plaintiff was granted a license as a substitute teacher in the high

schools of the State of New York; and on August 11, 1967, plaintiff received a regular license, day elementary school, teacher of common branches.

On September 6, 1967, plaintiff was appointed under his regular license to a three year probationary term at Public School 151 Queens and at the end of the first of the three year probationary term (1967–68) the plaintiff was rated satisfactory on April 11, 1968 by the former defendant herein John A. Murphy, plaintiff's principal.

In plaintiff's second probationary year at Public School 151 in Queens, his principal, the former defendant Murphy, submitted a report on March 28, 1969, to the Board rating plaintiff's performance as a teacher as unsatisfactory for the period from September 10, 1968 through June 30, 1969, and recommending that his probationary appointment be discontinued and that he be directed to submit to a medical examination to determine his fitness to teach. The unsatisfactory rating was concurred in by Mary Halleron, Assistant District Superintendent of the District in which Public School 151 is located.

Following certain medical examinations in May and June, 1969, the Medical Division of the defendant Board entered a finding on July 18, 1969, that plaintiff was "unfit for duty" and should be placed on leave of "absence at least until January 31, 1970 for purpose of health restoration". By letter dated September 3, 1969, the defendant advised the plaintiff that he was not to report to school effective September 5, 1969 and was placed on leave of absence for medical reasons through January 30, 1970.

On September 8, 1969, plaintiff commenced an Article 78 proceeding in New York Supreme Court challenging the authority of the Superintendent of Schools to place him on involuntary leave of absence and seeking restoration to duty. This action was apparently dismissed on January 16, 1970 and reargument was denied on June 29, 1970 (Supreme Court, Kings Coun-

ty Index No. 2090/67). Because of this litigation no action was taken prior to January 1970 on the recommendation of former defendant Murphy to discontinue plaintiff's probationary service and no psychological testing of plaintiff was scheduled in the latter part of 1969.

Following further medical examinations in January and March of 1970 the Medical Division in a report dated March 9, 1970, found the plaintiff not fit to return to work and placed him on another leave of absence for medical reasons until June 30, 1970, so advising the plaintiff by letter dated March 12, 1970.

In the interim and on February 24, 1970, a so-called "105(a) termination review proceeding"[1] was scheduled to review former defendant Murphy's and Assistant District Superintendent Halleron's recommendation that plaintiff's probationary appointment be discontinued. This proceeding which had originally been scheduled for October 20, 1969, but had been adjourned pending the resolution of the Article 78 proceeding was ultimately rescheduled and held on April 20, 1970, before a Committee of Supervisors designated to sit on behalf of the Chancellor of the New York City School District. About a month before the hearing the plaintiff was given a copy of material submitted by the principal in support of his rating and recommendation.

On or about the 28th of May, 1970, the Committee recommended by internal memorandum to the Chancellor that former defendant Murphy's rating and discontinuance of service be approved on five grounds:

"(1) Illogical and disoriented conversation, causing request for examination by the Medical Department which found him unfit for duty.

(2) Weakness in discipline and class control.

(3) Incompetent and ineffectual instructional service.

---

[1]. Section 105(a) of the By-Laws of the Board of Education—"Hearings Related to Probationary Period—" (etc).

(4) Inattention to routine matters such as keeping records of pupils attendance, admission or discharges. Poor relations with Supervisors and Teachers.

(5) Violation of the By-Laws on Corporal Punishment."

Apart from its publication in connection with this litigation, this memorandum was never published nor made available to any prospective employer, to the public or to any particular person not having a need to know within the School District hierarchy.

The Committee's recommendation was reviewed and approved by Acting Chancellor Irving Anker who notified the plaintiff on May 28, 1970, that he concurred in the unsatisfactory rating and the recommendation for discontinuance of probationary service on the grounds of "incompetence, inefficiency and weakness in discipline."

No publication of this notice was made to officials of the Board other than those with a need to know and none was made to the public or prospective employers.

On June 11, 1970, Community School Board No. 23 voted at a public meeting to discontinue plaintiff's probationary service effective September 10, 1970, and adopted the following explanation of its action: "Mr. John Lombard, a probationary teacher of common branches at Public School 151, Queens, was appointed September 7, 1967. On March 28, 1969, Mr. John A. Murphy, Principal of Public School 151, Queens, submitted a report evaluating Mr. John Lombard as unsatisfactory and recommending discontinuance of probationary service. His recommendation was supported by Miss Mary Halleron, District Superintendent. On Monday, April 20, 1970, Mr. Lombard, accompanied by Mr. Louis Gootnick as adviser, was summoned to appear before the Superintendent's Committee in order to give him the opportunity to reply to the Principal's unsatisfactory evaluation. After careful consideration, the Committee sustained the Principal's Estimate of General Fitness as unsatisfactory and his recommendation that Mr. Lombard's probationary service be discontinued."

Either on this date of June 11th but in any event no later than October 21, 1971, plaintiff's licenses were revoked or deemed revoked.

On June 7, 1971, plaintiff commenced an Article 78 proceeding challenging the termination of his probationary service and on June 27, 1972, plaintiff's petition was dismissed, the New York Supreme Court holding that "the hearing accorded petitioner was proper and that the determination to terminate the services was not arbitrary and capricious". This decision was affirmed by the Appellate Division, 40 A.D.2d 1081, 337 N.Y.S.2d 1003 (2d Dept. 1972), and on February 15, 1973, Court of Appeals denied leave to appeal, 31 N.Y.2d 648 (1973).

In 1970–71 the plaintiff sought and obtained employment with the defendant under his substitute license in distributive education for 101 days in that school year and in 1971–72 plaintiff secured employment under his substitute license in distributive education.

During the period from August 25, 1972 through February 9, 1973, plaintiff was hired as a teacher by the Narcotic Addict Control Commissioner of the State of New York and was terminated on the latter date for reasons not based on any findings of termination made by the Board in this case.

On May 26, 1971, the plaintiff's file number was placed on a circular distributed to principals and superintendents indicating that plaintiff could not be employed in any public school because of the discontinuance of his probationary service. This list, however, did not contain plaintiff's name nor any indication of the reason for placement of plaintiff's file number thereon. File numbers of employees are placed on this list for various reasons including failure to achieve course or experience requirements for licensure.

After commencing this action on March 16, 1972, plaintiff moved for a preliminary injunction for reinstatement as a teacher and his motion was denied in 1973 by Judge

Travia, without opinion, and his complaint was dismissed for failure to state a claim upon which relief could be granted.

On appeal to the Second Circuit that Court reversed and remanded ordering "a trial in a District Court to determine whether appellees have violated [Lombard's] federal constitutional rights" and "for further consideration of Lombard's motion for a preliminary injunction . ." *Lombard v. Board of Education of the City of New York*, 502 F.2d 631, 638 (2d Cir. 1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

On remand to this Court the plaintiff renewed his motion for a preliminary injunction and the undersigned denied that motion on the grounds that "there is no demonstration of irreparable injury or showing that the balance of hardships tips sharply in his favor". *Lombard v. Board of Education of the City of New York*, 400 F.Supp. 1361, 1362 (E.D.N.Y.1975). In a supplemental memorandum and order dated September 9, 1975 (reported at 400 F.Supp. 1362), this Court also denied the defendants' contention that any question of the plaintiff's mental disorder ought to be submitted to the Committee of the Superintendent of Schools and not be tried by this Court. The ground for that denial was primarily that the Court of Appeals had ordered a trial of the plaintiff's claims in this Court.

The defendant then moved to dismiss the action against the Board for lack of jurisdiction on the ground that the Board was not a "person" under 42 U.S.C. § 1983. At that time, this Court also considered a prior motion by the plaintiff to amend his complaint to add an allegation that this Court had jurisdiction under 28 U.S.C. § 1331 in that the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the First and Fourteenth Amendment of the Constitution of the United States. The basis for plaintiff's motion is found in the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This motion to amend had apparently not been acted upon by Judge Travia at the time he dismissed the complaint.

This Court granted plaintiff's motion to amend and denied the Board's motion[2] to dismiss, holding on January 23, 1976 in a reported decision as follows (407 F.Supp. at 1170):

"From the foregoing it would seem that jurisdiction over the defendant Board of Education in this case may lie under 42 U.S.C. § 1983 in that school boards may in this Circuit be considered 'persons' within the meaning of that section; but even if it does not, jurisdiction would appear to exist under 28 U.S.C. § 1331(a) under the *Bivens* rationale."

In addition to the foregoing facts the parties stipulated to certain facts with modifications at the outset of the trial. Such stipulated facts are contained in the following paragraphs of the stipulation of facts submitted by plaintiff's counsel: 1, 3, 5[3], 6, 7[3], 9[3], 10, 11, 13[3], 15, 20, 21, 27, 28, 29, 30, 31, 31A[3], 32, 36, 37, 38, 39, 44, 45, 46, 47[3], 48[3], 49[3], 51[3], 52, 53, 54, 55, 58, 60[3], 61, 62, 63, 64, 66, 67, 68, 70, 71, 72, 73, 75, 75A[3], 76[3], 77, 78, 79, 80, 81A, 82, 83, 84, 87[3], 88, 93 and 94[3].

The Court has set forth above its principal findings of fact which it deems necessary for its decision herein but also makes and adopts as findings of facts the above-indicated stipulated facts as well as the following findings of facts submitted by the defendant at the conclusion of the trial, viz: Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 16, 17, 19, 20 (omitting the last six words thereof), 21 (omitting the last four words and substituting therefor the words "applied for"), 23, 24, 82, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 96, 99, 138, 139, 140, 141, 142,

---

**2.** However, this Court granted defendant Murphy's motion to dismiss on the ground that the plaintiff had alleged no federal claim against Murphy and that any potential State claim was probably barred by the appropriate statute of limitations.

**3.** As modified on the record at the outset of the trial.

146, 147, 148, 149, 150, 151, 152, 153, 154, 154a, 155, 156, 157, 158, 159, 160, 161, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 222 and 223.

At the trial the plaintiff attempted to prove that he was unconstitutionally deprived of both "liberty" and "property" interests without a due process hearing. We now turn to an analysis of these two separate claims.

## I

Plaintiff's "liberty" interest claim is based upon an alleged "stigmatization" in connection with plaintiff's termination, which the Court of Appeals has held may have arisen from a finding by the Board of "[i]llogical and disoriented conversation, causing request for examination by the Medical Department, which found him unfit for duty." 502 F.2d 631, 637 (2d Cir. 1974).

Since the Court of Appeals' decision in this case, however, the Supreme Court and the Court of Appeals have "made it clear that, to constitute a deprivation of a liberty interest, the stigmatizing information must be both false, *Codd v. Velger*, [429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92] (U.S. Feb. 22, 1977) (per curiam) and made public, *Bishop v. Wood*, 426 U.S. 341, 348, [96 S.Ct. 2074, 48 L.Ed.2d 684] (1976), by the offending governmental entity, *see Paul v. Davis*, 424 U.S. 693, 708–10, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, [91 S.Ct. 507, 27 L.Ed.2d 515] (1971)." *Gentile v. Wallen, et al.*, 562 F.2d 193, 197, (2d Cir. Sept. 15, 1977).

As indicated in the Court's findings of fact, the plaintiff in this case did not produce any evidence to show that the alleged stigmatizing information was ever made public and the defendant produced credible evidence that it was not. Accordingly, without deciding whether the alleged stigmatizing information was true or false, plaintiff's claim of a deprivation of a liberty interest, in the absence of publication, is without merit and must be dismissed.

## II

The "property" interest claims of the plaintiff, a non-tenured teacher, which appeared to evolve during the trial, seem to be based on an alleged revocation of his regular and substitute licenses at, or shortly after, the time of the termination of his probationary service. At or about that time the defendants also placed his file number on a circular distributed to other schools prohibiting his employment as a probationary or substitute teacher and advised him that his regular and substitute licenses were revoked.

The problem is complicated by the fact that while plaintiff's licenses were deemed revoked by the defendant on October 21, 1970, this legal conclusion was changed in another decision by the Commissioner of Education in the *Baronat* case[4] (Ex. BBBB), and from and after April 26, 1973 (Ex. CCCC) the Commissioner of Education regarded the plaintiff's licenses as still in full force and effect but never notified him of this. In any event, it seems clear that plaintiff was precluded from teaching either as a probationary or a substitute teacher under his license during the period from May 26, 1971 (the date his file number was placed on the circular notifying all principals) through April 26, 1973, if not to date.

Defendant at first half-heartedly suggested that "the attenuated nature of the interest involved in a substitute license is not constitutionally protected" but then conceded that the "procedures of [the] By-Laws of the Board with respect to revocation of any kind of license create a property interest in a substitute license". (Def's Post-Trial Memo. p. 21). Notwithstanding this admission, defendant argues that the type of hearing required to insure due process varies, depending upon the weight of the interest involved, that the weight of these property interests was minimal in that the licenses did not create any entitlement to employment and any employment thereunder was terminable at will, and that

4. *Matter of Baronat*, —— Ed.Dept.Rep. —— Decision No. 8396 dated Jan. 11, 1972.

the procedures heretofore followed by the Board therefore fully satisfied due process. Even if they did not, defendant argues that at most plaintiff was entitled to a post-termination hearing in view of the facts and circumstances presented here.

As a matter of record, the plaintiff was in fact afforded a proceeding or process in connection with his termination as a probationary teacher (which at that time, i. e., prior to *Baronat*, automatically revoked both his licenses). The defendant claims this proceeding satisfied any "due process" that may have been required. In view of our opinion with respect to the law, however, we do not have to resolve this question of whether plaintiff was accorded due process or, if he was not, the further question of what, if any, damages he sustained as a result thereof.

■ In the present posture of plaintiff's claims, his claims for equitable relief—namely, reinstatement of his licenses—are moot because the defendant acknowledges that they were reinstated from and after April 26, 1973, and are presently in full force and effect. Thus this Court need now only consider plaintiff's claim for damages.

As to this claim for damages, since our most recent decision in *Lombard* (407 F.Supp. 1166), the Court of Appeals for this Circuit has held that, "there is no cause of action for damages under Section 1983 against a school board in its official capacity" and that there is "no jurisdiction over (such) claim under 28 U.S.C. Sec. 1343(3)." *Gentile v. Wallen, et al., supra*, 562 F.2d at, citing *Monell v. Department of Social Services*, 532 F.2d 259 (2d Cir. 1976), *cert. granted*, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (U.S. Jan. 19, 1977) and *Kornit v. Board of Education*, 542 F.2d 593 (2d Cir. 1976) (*per curiam*).

■ Moreover, plaintiff has no claim for back pay which may be said to be an adjunct of equitable relief, *see Monell v. Department of Social Services*, 532 F.2d 259, 267 (2d Cir. 1976), because he would only have been entitled to make a claim for such back pay if he had been reinstated to his position as a probationary teacher by reason of a deprivation of a liberty interest without due process of law. The revocation of his licenses simultaneously with the termination of his probationary teaching services did not carry with it any deprivation of pay. His probationary services for which he was being paid were terminable at will and were so terminated. If his licenses had not then been automatically revoked he would not then have been entitled to any pay but only the right to look for and possibly obtain another probationary or substitute teaching position. In other words, at best, the revocation of plaintiff's licenses gave rise to a claim for money damages by reason of an alleged foreclosure of opportunities to obtain and work at other positions but not for back pay. This claim though will not lie against the school board in its official capacity under Section 1983 and the *Monell* case, as noted above.

However in the recent *Gentile* case, *supra*, the Court of Appeals did sustain our view that this Court had under 28 U.S.C. § 1331, "jurisdiction to consider [plaintiff's] Fourteenth Amendment claim", 562 F.2d at 196, and held that "a valid cause of action [may be stated] against the school board . . . directly under the Fourteenth Amendment." *Id.* The Court of Appeals did not, however, reach the question of "[w]hether money damages are available under this cause of action or only equitable relief" asserting that this "is a question of remedies that we need not reach in view of our holding on the merits of the case." (562 F.2d at 197, f.n. 4).

The question therefore is whether plaintiff may now assert and recover money damages from the plaintiff under the Fourteenth Amendment assuming, *arguendo*, that his licenses were improperly revoked without due process of law.

We begin by pointing out that plaintiff's licenses were revoked at or about the time when plaintiff's probationary services were terminated by the Community School Board on July 11, 1970, and plaintiff was so advised of this fact. Plaintiff filed his first complaint herein on March 16, 1972 and in

that document sought only equitable relief against the defendant School Board.

As noted above, in June of 1973, plaintiff moved to amend his complaint by adding an allegation that this Court had jurisdiction under 28 U.S.C. § 1331 on the theory that his claim arose directly under the First and Fourteenth Amendments of the Constitution but did not move then or at any other time to amend his claim for relief to assert a claim for money damages. Indeed, in *Lombard v. Board of Education*, 407 F.Supp. 1166 (E.D.N.Y. January 26, 1976) we questioned whether at that juncture plaintiff might be entitled to assert a claim for damages in view of the Second Circuit's decision in *Fine v. City of New York*, 529 F.2d 70 (2d Cir. 1975), and still plaintiff has made no attempt to amend his complaint to assert any such claim. Finally, even though as noted above plaintiff's "property" interest claim appeared to evolve during the trial, no motion was ever made by the plaintiff to conform the pleadings to the proof. Accordingly it is questionable at this point whether any such claim is pending before this Court.

Even if this Court does construe such a claim to be before it now, it is this Court's opinion that this claim is time-barred. In determining the statute of limitations applicable to a Fourteenth Amendment claim, it has been well established in this jurisdiction that one must look to the most appropriate State statute of limitations, *see Fine v. City of New York*, 529 F.2d 70 (2d Cir. 1975).

In *Fine*, the Court of Appeals was presented with a comparable question to the one posed here and it remanded the action to the District Court for a determination as to whether the Fourteenth Amendment claim would be time-barred under the most appropriate state limitations period suggesting at the same time that "the one year and ninety day period of limitation provided by General Municipal Law Sec. 50–i, governing tort claims against municipalities "might be the one most applicable" (529 F.2d at 76).

In this jurisdiction it has been well established that one must look to the most appropriate state statute of limitations and that the one applicable to Section 1983 actions is the three year period for actions to recover upon a liability created by statute (New York Civil Practice Laws and Rules (CPLR) Section 214(2)), *Meyer v. Frank*, 550 F.2d 726, 728 (2d Cir. 1977); *Kaiser v. Cahn*, 510 F.2d 282, 284 (2d Cir. 1974); *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90; *Romer v. Leary*, 425 F.2d 186, 187 (2d Cir. 1970); *see Swan v. Board of Education*, 319 F.2d 56, 60 (2d Cir. 1963).

■ Despite an *obiter* suggestion by Judge Werker in *Santora v. The Civil Service Commission, City of New York*, (S.D.N.Y.1977) Docket No. 76C 1695, that the controlling statute might be the six year statute contained in CPLR § 213, it seems clear to us that, as in *Fine*, plaintiff's action under the Fourteenth Amendment is essentially a tort action and as such is subject to the provisions of Section 3813 of the Education Law and Section 50–i of the General Municipal Law.[5]

Applying those statutes here, plaintiff's claims for money damages are clearly barred because plaintiff did not commence his action within one year and ninety days of the "happening of the event upon which the claim is based." *Fine, supra*, at 77; *see also Lombard v. Board of Education*, 407 F.Supp. 1166, 1171 (E.D.N.Y.1976).

■ Nevertheless, even if plaintiff's claims are not so precluded, this Court has also clearly indicated that it does not believe that a claim for money damages may be predicated upon the Fourteenth Amendment, *Turano v. Board of Education*, 411 F.Supp. 205, 211, 212 (E.D.N.Y.1976), and, since this decision, in a well-reasoned opinion, Judge Henry L. Werker has concurred in this view, *Santora v. The Civil Service Commission, City of New York, supra; see*

---

5. Our decision in *Ervin v. Lanier*, 404 F.Supp. 15 (E.D.N.Y.1975), suggesting that the applicable limitation period might be the three year

action upon a statute (CPLR § 214(2)) was in effect modified by the subsequent decision of the Court of Appeals in *Fine*.

*also Mitchell v. Libby*, 409 F.Supp. 1098, 1099 (D.Vt.1976).

The Court holds therefore that no claim for money damages has been properly asserted herein and, even if plaintiff's claim was amended so as to assert the same, plaintiff's claims for money damages would be time-barred and, even if they would not, they may not be based upon the Fourteenth Amendment and must be dismissed.

Therefore plaintiff's complaint must be, and the same hereby is, dismissed.

SO ORDERED.